INDIANA INSURANCE CO. *v.* KNOLL ET AL.

[No. 767A33. Filed April 22, 1968. No petition for rehearing filed.]

*Frederick H. Link, Douglas D. Seely, Jr.,* of South Bend, and *Jones, Obenchain, Johnson, Ford & Pankow,* of South Bend, of counsel, for appellant.

*Benjamin Piser,* and *Piser & Cox,* of South Bend, for appellees.

COOPER, J.—This is an appeal from the Starke Circuit Court, wherein the Appellant brought an action seeking a judicial determination, by way of a declaratory judgment, to determine whether a certain policy of insurance was void or voidable because of alleged false answers and representations made by the insured when he executed the underwriting questionaire as a part of his application for insurance.

After the proper issues were closed, the cause was submitted to the trial court upon an agreed statement of facts upon which the Court entered the following finding and judgment:

"Upon the agreed statement of facts, the Court finds against the plaintiff and for defendants Knoll, Howell, Estate of Gerald Knoll.

"The Court finds that the policy of Insurance #FAS-06-045-074 of the Indiana Insurance Company to Gerald Knoll and Virginia Knoll was and is a valid, binding and enforceable contract of insurance for the period of 5-28-64 to 5-28-65.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT THAT plaintiff take nothing by way of its complaint.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT the policy of insurance #FAS-06-045-794 issued by the Indiana Insurance Company to Gerald Knoll and Virginia Knoll was and is a valid, binding and enforceable contract of insurance for the period of 5-28-64 to 5-28-65.

"Costs v. plaintiff."

Thereafter Appellant filed its motion for a new trial which the trial court overruled and that ruling is the assigned error on, appeal.

Because of the result we have reached, we believe the only pertinent specification of error in the motion for new trial is number four which alleges:

"That the decision of the court is contrary to law."

The agreed statement of facts appearing in the record is as follows:

"1. On the 28th day of May, 1964, Gerald Knoll, also known as Gerald L. Knoll, and Virginia Knoll made application for private passenger automobile insurance to the plaintiff, Indiana Insurance Company. The face side of the application was filled out and signed by the Bardonner Insurance Agency, Michigan City, Indiana. The reverse side of the application which is entitled 'Underwriting Questionnaire' containing information furnished by Gerald Knoll was signed by Gerald Knoll. A copy of form of application as it was filled out and signed is attached hereto, made a part hereof and marked Exhibit 'A'.

"2. The Bardonner Insurance Agency issued an insurance policy after Bardonner Insurance Agency signed the face side of the application and Gerald Knoll signed the reverse side of the application designated 'Underwriting Questionnaire', as referred to in statement No. 1 above. The policy was issued on May 28, 1964. A copy of the policy as issued is attached hereto, made a part hereof and marked Exhibit 'B'.

"3. After the issuance of such policy, Gerald Knoll, while operating a motor vehicle purportedly covered by such policy, was involved in an automobile accident.

"4. Various parties, including all of the defendants in this action, have made a claim against the Indiana Insurance Company under the policy above referred to.

"5. The pertinent parts of the Driver Record of Gerald Knoll as shown in the Michigan City Police Department, Michigan City, Indiana, are:

| | | | Type | Arrest |
|---|---|---|---|---|
| 8-25-63 | Franklin St. | Barker Ave. | AAMajor | None |
| 8-31-63 | Franklin St. | 8th St. | AAMajor | Yes |

"6. The pertinent part of the Driver Record of Gerald Knoll as shown by the records in the office of the Commissioner of the Bureau of Motor Vehicles in the State of Indiana is:

Accident No. 8-31-63 1021256-DO. Suspended as of October 31st, 1963. Proof required.

"7. After the accident referred to in statement of fact No. 3 above, plaintiff, Indiana Insurance Company, began to process and undertook to pay claim of Virginia Knoll and tendered releases to her but thereafter notified Virginia Knoll that the plaintiff considered the policy void and tendered back the premium paid for said policy with interest thereon to the said Virginia Knoll, wife of Gerald Knoll.

"8. The Bardonner Insurance Agency, which issued said policy at the time of the issuance of the policy had in its possession and was instructed by plaintiff to follow the 'Agents' Automobile Rule and Rate Manual' issued by plaintiff, Indiana Insurance Company, which Agents Automobile Rule and Rate Manual on pages A3 and A4 contained an automobile underwriting guide and prohibited list which said guide and said list are attached hereto, made parts hereof and marked Exhibits 'C' and 'D' respectively.

"9. Gerald H. Bardonner, who issued the policy, would not have issued the policy above referred to had he known of the true facts involved in the driving record of Gerald Knoll as set out in statements of fact Nos. 5 and 6 above for the reason that he was prohibited from so doing under Exhibits 'C' and 'D' above referred to and that if called to testify in this proceeding, the said Gerald H. Bardonner would testify substantially as set out in his statement

attached hereto, made a part hereof and marked Exhibit 'E'.

"10. Plaintiff would produce at the trial of this cause testimony by a representative of the plaintiff, Indiana Insurance Company's underwriting department and testimony of an independent underwriting agent engaged in such business in the State of Indiana that if the facts in regard to the driving record of Gerald Knoll, as set out in statements of fact Nos. 5 and 6 above, had been known to the plaintiff company, the policy above referred to would not have been issued by the company and that such facts were of a nature as to affect the plaintiff company's decision as to whether to accept the risk or accept the risk on different terms or conditions.

/s/ Frederick H. Link
Frederick H. Link,
Attorney for Plaintiff

/s/ Benjamin Piser
By: Dempsey A. Cox

/s/ Arthur Allen Keppen
Attorneys for Defendants

"INDIANA INSURANCE COMPANY
INDIANAPOLIS INDIANA
PRIVATE PASSENGER AUTOMOBILE APPLICATION
IMPORTANT SEE REVERSE SIDE

"All Questions Must Be Answered Unless A Policy Has Already Been Written, In Which Case Give Policy Number ———— Complete Bracketed Items On This Side and Reverse Side In Its Entirety.

Applicant: *Gerald Knoll & Virginia Knoll*

(a) If applicant is an individual, is he sole owner?——

(b) If more than one applicant, who owns the automobile? ————

Address: *118 E Waren St. Michigan City Ind.*

Policy Period: ———————— to ————————
*500XL-67-2DR H.T.*

Car 1: *1963 Ford* Year-Trade Name-Model-Type Body Identification, Motor, or Serial Number *3z67z112562 8* No.

of Cyls. *L* Symbol —— Cost New- Actual Cost *2400.00*
Date of Purchase *5-28-64* New or Used *Used*

Car 2:———Year-Trade Name-Model-Type Body————
Identification, Motor, or Serial Number —————————
————No. of Cyls. ——Symbol —— Cost New ————
Actual Cost ———— Date of Purchase ———— New
or Used ——————

Loss Payee: *First Merchants Natls Bank* Address *Mich City Ind*

Garaging Point: ———— Same as Applicant Add. Unless
Otherwise shown ———— Purpose of Use: ————

Is car driven to and from work: Car 1 *yes* If so, give
mileage, one way: Car 2 ————

 Car 1 *1* Average annual mileage: Car 2 ————

 Car 1 *1* Average annual mileage: Car 1 *10,000*
 2————

Is car ordinarily used in business other than in going to
and from work: Car 1 *No* Car 2 ——————

Occupation: *Pipe Mechanic* Employer: *Michigan City
Water Dept.* Employer's Address: *Mich City, Ind*

Husband's name, occupation and employer ——————

Rating Classification: ————————Type Policy: ————
Family: ———————— All Star (Available only in Indi-
ana & Ohio) ; ———————— Standard

| PREMIUMS | | CODES | LIMITS OF LIABILITY |
|---|---|---|---|
| Car 1 | Car 2 | | |
| $31.00 | $ | 11– | $10,000 Each Person |
| | | | $20,000 Each Occurrence |
| 20.00 | | 12– | $ 5,000 Each Occurrence |
| 7.00 | | 13– | $ 500 Each Person |
| 23.00 | | 15– | $ or ACV |
| 43.00 | | 14– | $ 100 Deductible from ACV |
| | | 14– | $ Deductible from ACV |
| | | 15–4 | $ or ACV |
| 2.00 | | 16–1 | $25. per Disablement |
| 3.00 | | 18– | $10,000 Each Person |
| | | | $20,000 Each Accident |

## COVERAGES

Bodily Injury Liability A
Property Damage Liability B
Automobile Medical Payments C
Comprehensive D
Collision or Upset E
Collision or Upset, Disappearing Ded. E-1
Fire, Theft, Windstorm F-G-H
Towing and Labor Costs 1
Family Protection U

| $————————Total | Term | Symbol |
|---|---|---|
| $51.60 In advance | H. O. Codes Stat. | |
| $38.70 Due Date | Car 1 Car 2 | |
| $38.70 Due Date | Agency | Location |

Total Premium is Payable In Advance
Unless Otherwise Indicated.

5-28-64
Date /s/ Bardonner Ins Agency
 Agent

## EXHIBIT "A"

## "UNDERWRITING QUESTIONNAIRE

Is this risk new to agency? ——Yes; ——No
Previous Insuror None

THE NAMED INSURED:

Birth Date: 1-24-38 Driver's License No. K540-275-497-065
Known to you _____ Years
Marital Status: —— Single; X Married; —— Divorced;
——Widowed; —— Separated
Without impairments X Yes; —— No ————————
 (Explain any no answer)
Lived in same town over one year X Yes; —— No;
Speaks English Well X Yes; —— No.
Is principal Operator X Yes; —— No.

## DRIVER (OTHER THAN THE NAMED INSURED)

Name Birth Date Driver's License Number

Virginia Knoll Wife 7-27-43 Permit E120582

Marital Status Member of Hshld. Impaired Percent of
 use of Car 1 Car 2

 Married X No

THE AUTOMOBILE/S (Complete for private passenger type only)

Car 1

Garaged: —— Yes; X No. Engine Size: 390 Horsepower
No. and Type Carburation: —— No.: 4 No. Bbl.

Air Conditioning: —— Yes X No Bucket Seats: X Yes
—— No Is this Original Engine X Yes; —— No

Power Steering: X Yes; —— No Tachometer: —— Yes;
X No. Std. Transmission with Floor Shifts —— Yes;
X No.

List other special equipment:

Car 2

Garaged: —— Yes; —— No. Engine Size: —— Horse-
power

No. and Type Carburetors: —— No.: —— No. Bbl.

Air Conditioning: —— Yes; —— No. Bucket Seats:
—— Yes: —— No

Is this Original Engine? —— Yes; —— No.

Power Steering: —— Yes; —— No. Tachometer: —— Yes;
—— No

Std. Transmission with Floor Shifts —— Yes; —— No

List other special equipment:

LOSS HISTORY STATEMENT—In the 36 months period immediately prior to the effective date of this insurance, has the applicant or any resident of the household, been involved in an accident while operating a motor vehicle, resulting in (a) damage to any property, including his own, or (b) Bodily injury to or death of any person?

X Yes —— No. If "Yes," complete the following. (If more than two, use separate sheet.)

514

| Name of | Date of | Location of | Bodily Injury |
|---|---|---|---|
| Operator | Accident | Accident | or Death |
| Gerald Knoll | 8-29-63 | Mich City Ind. | —— Yes; X No |
| | | | —— Yes; —— No |

Damage To Property ACCIDENT TYPE
 $652.00 A B C D E F G H
$————————— X

\*ACCIDENT TYPE

(A) Automobile Lawfully parked.

(B) Automobile struck in rear end and applicant or person residing in his household was not convicted.

(C) Reimbursed by, or in behalf of, person responsible for the accident or have judgment against such person.

(D) Other person involved in accident was convicted. Applicant or person residing in his household was not convicted.

(E) Damaged by "hit-and-run" driver and accident reported to the police within 24 hours from time of accident.

(F) Accident involved damage by contact with animals or fowl.

(G) Accident involved Physical Damage, limited to and caused by flying gravel, missiles, or falling objects.

(H) Other

Have all principal operators possessed a valid Driver's License for a minimum of three full years: If "No", explain: *Virginia just got drivers license*

*Has any driver had auto insurance declined, cancelled, renewal refused or had his driver's license revoked, suspended, restricted, or been required to file evidence of Financial Responsibility during the past 36 months? If "Yes", explain:* No (our emphasis).

 /s/ X Gerald L. Knoll
 Applicant
 —————————————————
 Agency

(If application is not signed by applicant, agent certifies that he has obtained the foregoing information directly from the applicant and believes it to be correct.)"

The facts having been ascertained and agreed upon by the parties, there was no question of fact for decision by the court below. The only question before the court was one of law, and not of fact, or of fact and law, and the sole function of the trial court was to determine the law applicable to the facts as they are shown by the pleadings and the agreed statement of facts in the record now before us.

The Appellant contended in the trial court and now contends in this appeal that the false answers made by the applicant Gerald Knoll to the Appellant's "underwriters questionaire" were material, and had the Appellant known the true facts concerning the driving record of the said Gerald Knoll, the company would not have issued the policy.

The general rule of law is that it is essential there must be a meeting of the minds upon all the necessary elements of an insurance contract, such as the subject matter, the risk insured against, the amount, the duration of the risk and the premium. If it is incomplete in any of the material particulars, or the assent of either party is wanting, such contract has no binding force. West's Indiana Law Encyclopedia Vol. 16, *Insurance*, § 85, p. 225; *The Celina Mut. Casualty Co.* v. *Baldridge* (1937), 213 Ind. 198, 10 N. E. 2d 904.

We are of the opinion that it would seem to be obvious that the questions in an "underwriters questionaire" which concern past driving records of an applicant are intended to elicit information from which the Company may determine whether to assume the risk and issue the policy. A deliberate false answer of "no" by the applicant, Gerald Knoll, to the following question:

"Has any driver had auto insurance declined, cancelled, renewal refused, *or had his driver's license revoked, suspended, restricted, or been required to file evidence of Financial Responsibility during the past 36 months?*" (our emphasis).

when, in fact, at the time he executed the questionnaire on May 28, 1964, his driver's license had been suspended as the result of an accident on October 31, 1963, and proof of his financial responsibility had been required, as is shown by the agreed statement of facts, was sufficient in itself to establish concealment and misrepresentation by said Gerald Knoll.

A concealment in the law of insurance implies an intention to withhold or secrete information so that the one entitled to be informed will remain in ignorance. When one has a duty to disclose, such concealment under the law of insurance, implies deceit, and the procurement of a policy of insurance through the concealment of material facts which one is duty bound to disclose, amounts to fraud, which may vitiate the policy. *The Rushville National Bank of Rushville, Trustee, et al.* v. *The State Life Insurance Co.* (1936), 210 Ind. 492, 1 N. E. 2d 445. See also West's Indiana Law Encyclopedia, Vol. 16, *Insurance,* § 172, p. 291.

In the treatise of Appleman, Insurance Law and Practice, Vol. 12, § 7273, at page 377, we find the following statement:

"A concealment sufficient to avoid a policy must be in connection with a matter material to the risk. Where the concealment could in no event increase the risk loss, or would not induce the insurer to decline the risk or charge a higher premium, the matter could scarcely be considered material.

"Conversely, if the insured failed to disclose matters material to the risk, such as might have influenced the insurer's determination as to acceptance of the risk or fixing of the premium charge, the contract is voidable at the insurer's option."

After a review of the various authorities, we are of the opinion that it is the general rule of law in almost every jurisdiction that insurance policies are contracts in which the utmost good faith is required both on the part of the insurer and the insured. A failure by the insured to disclose conditions affecting the risk of which he is

aware makes the contract voidable at the insurer's option. In Indiana we follow the majority rule. Our Supreme Court in the case of *Brunnemer, Admx.* v. *Metropolitan Life Ins. Co.* (1938), 213 Ind. 650, 14 N. E. 2d 97, at p. 658 said:

> "If the insurer in the application asks the prospective applicant about a fact that is within his knowledge, and he answers falsely, still such false answer does not necessarily avoid the policy. Whether or not the false answer will have the effect of avoiding the policy will depend upon a determination of its materiality. If the facts that are withheld or suppressed by the false answer would have reasonably entered into and influenced the company in its decision as to whether it would issue the policy, then such false answers would avoid the policy. But on the other hand, if such suppressed matters could not have reasonably influenced the decision of the company on the question of issuing the policy, then it is difficult to see how such immaterial matter could be considered harmful. So if the company inquires about matters, calling for the opinion of the insured, such as was the case in *Mouler* v. *American Life Insurance Company, supra,* the applicant is obliged to answer truthfully and with the utmost good faith, because the question calls for information vital and material to the insurance company; and if the answer is false and known to be false at the time, such false answers will render the policy void."

In the case of *Metropolitan Life Insurance Co.* v. *Head* (1927), 86 Ind. App. 326, 328, 157 N. E. 448, at 449, this Court stated:

> "It is well established that, if representations in an application for insurance are false and material, that is, are such as would have influenced the action of the company upon the application in regard to whether or not it would grant the insurance, the policy will be vitiated, unless the company has in some way waived the benefit of it by its conduct and with knowledge of the facts."

In the case of *Metropolitan Life Insurance Company* v. *Becraft* (1938), 213 Ind. 378, 12 N. E. 2d 952, at pages 384 and 385, our Supreme Court stated:

"False representations, concerning a material fact, which mislead, will avoid an insurance contract, like any other contract, regardless of whether the misrepresentation was innocently made or made with a fraudulent design. *New York Life Insurance Co.* v. *Kuhlenschmidt* (1937), ante 213 Ind. 212, 11 N. E. 2d 673 ... An unqualified statement that a fact exists or does not exist, made for the purpose of inducing another to act, implies that the person who makes it is acquainted with the facts, and, if action is induced by the representation and false statement, the law will impute to him who made the false representation a fraudulent purpose. *Kirkpatrick* v. *Reeves, et al.* (1889), 121 Ind. 280, 22 N. E. 139. 'Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not and it is actually untrue, he is guilty of falsehood, even if he believes it to be true, and if the statement is thus made with the intention that it shall be acted upon by another who does so act upon it to his injury, the result is actionable fraud.' *Rochester Bridge Co. et al.* v. *McNeill* (1919), 188 Ind. 432, 439, 122 N. E. 662. It is the injury caused by the misrepresentation of fact that the law protects against. If the misrepresentation was brought about by forgetfullness or mistake it is just as injurious as an intentional fraud. It accomplishes a fraud upon the other contracting party by inducing him to act upon a false premise, where he would not have acted had he known the truth. Whether it be caused by negligence, or actual fraudulent purpose, good intention or bad, the result is the same. There is no meeting of the minds. It was not necessary for the jury to find fraud as a fact. If there is misrepresentation of a material matter the law constructs the fraud."

Where, as in the cause now before us, where the pleadings, agreed statement of facts and the law applicable thereto reveal that the Appellant has been denied a decision that it was entitled to, such decision is contrary to law.

The Judgment is reversed, and the trial court is ordered to take such further steps as are not inconsistent with this opinion.

Carson, C. J., Faulconer and Prime, JJ., concur.

NOTE.—Reported in 236 N. E. 2d 63.